By the Court.—Horace Eussell, J.—[After stating the facts as above.]
The. first question is whether the defendants were entitled to a new trial on the ground of surprise.
They certainly had a right to go into the trial relying upon the plaintiff’s statement of his case in Ms complaint, and therefore, upon his admission that he had received the sum stated in the complaint on account of his commissions upon the sales alleged. *50 therein. They were justified in not providing evidence as to matters either conceded in the pleadings or not alleged in them. The learned judge who presided at the trial" so held, when he refused to permit the plaintiff to amend his complaint unless he would consent that the defendants have time to amend their answer and send for witnesses to New Orleans to meet the new issues raised by such amendments, but on a subsequent day the judge permitted the plaintiff to partially accomplish substantially the same thing, by allowing him to withdraw his admission in his complaint as to a portion of the money received by him. The defendants had claimed that that money, as well as the other sum credited, was paid on account of the services alleged in the complaint. Their testimony tended to show it was. The evidence of Baker and other witnesses whose affidavits were subsequently produced, tended also to show it. They were justified in not taking Baker’s and Armstrong’s testimony before the trial as to this, because there then existed no issue in relation to it. The complaint substantially conceded it. I think then they might fairly claim that they were taken by surprise by this testimony, and that it should not have been received for that reason. This error, standing by itself, would justify our awarding the defendants a new trial. Perhaps the injury to the defendants, so far as it turns purely upon this question, could be cured by compelling the plaintiff to stipulate to reduce the amount of his judgment by the sum of $145, as a condition to an affirmance for the balance; but the affidavits introduced, and the letter contained in the statement of facts, present a question which goes to the merits of the whole controversy.
The verdict was one which turned upon the credibility of witnesses. The plaintiff claimed that he was entitled to his commission immediately upon sending in subscriptions, without reference to whether those *51 subscriptions turned out good or bad—that is to say, that he was entitled to a commission of $15 upon the “American Cyclopedia,” upon sending to the defendants the name of a subscriber, even though it should turn out that the subscriber whose name he sent never took or paid for a single volume; and so as to the other serial publications. The defendants upon their part claimed that the plaintiff was not entitled to commissions upon his subscriptions unless they turned out good ; and that the usual test as to whether or not a subscription was good, was the receipt of and payment for five numbers of the Cyclopedia or ten parts of the other serial publications. The plaintiff’s version of the contract rested mainly on his own testimony as to his conversation with Davis. Davis positively denied the plaintiff’s version of the contract. The defendants introduced a great deal of evidence which tended -strongly to show that the greater part of the subscriptions sent by the plaintiff were of no value, because the alleged subscribers did not- take the usual number- of parts to make the subscription “good.” Their evidence also tended to show that they had paid to the plaintiff, for commissions, a sum greatly in excess of what he would be entitled to receive on their theory of the contract.
Without stating particularly wherein, it may be-said that the plaintiff’s letter written from New York June 6, 1878, to D. W. Baker, is somewhat in conflict with his testimony given on the trial. The affidavit of Armstrong tends to show that the $145 paid to the plaintiff in New Orleans, was paid on general account, and not specifically on account of the orders for the “ Condensed Cylopedia.” If the defendants had produced this letter or had Armstrong present to testify at the trial, the jury would have been justified in discrediting the plaintiff’s testimony and adopting the defendants’, in which case the plaintiff should have *52 had no verdict at all. The letter, at least, comes within the rule as to newly-discovered evidence, not alone because it tends to impeach the plaintiff’s testimony given at the trial, but because it is an admission on his part of facts to some extent inconsistent with the theory of his claim.
• The testimony of Armstrong tends to .show that the defendants could have successfully met and combated the plaintiff’s testimony that the $145 paid in JYew Orleans was paid on account of subscriptions to the “ Condensed Cyclopedia” specifically, if they had information from the pleadings that such a claim would be made. So, on the ground taken by the defendants —surprise—the plaintiff’s testimony on that point ought not to have been received. If the plaintiff testified falsely on that subject, as Armstrong’s affidavit tends to show—supposing Armstrong is to be believed —a jury might disregard the plaintiff’s testimony altogether, and so defeat'his entire claim.
Substantial justice can be done only by ordering a new trial.
The result is, that the order denying the motion for a new trial, on the ground of surprise, is reversed, with costs to abide the event.
The order granting a new trial, on the ground of newly-discovered evidence, is affirmed, with costs to abide the event.
And the order denying a new trial on the minutes, is reversed, with costs to abide the event.
Fbeedman, J., concurred.